**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
(Newport News Division)**

| | | |
|---|---|---|
| **HAMPTON ROADS III OWNER, LLC** | * | |
| Plaintiff, | * | |
| v. | * | |
| **SCIENCE SYSTEMS AND APPLICATIONS, INC.** | * | CASE NO.: 4:23-cv-00119-AWA-RJK |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT SCIENCE SYSTEMS AND APPLICATIONS, INC.'S
<u>REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS</u>**

Defendant Science Systems and Applications, Inc. ("SSAI"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as Local Civil Rule 7, hereby files this Reply in Support of its Partial Motion to Dismiss Count I (Breach of Contract) of the Complaint filed by Plaintiff Hampton Roads III Owner, LLC ("Hampton").

As explained in greater detail below, Hampton's Opposition [ECF No. 8] (sometimes referred to as the "Opp.") notably does not contest SSAI's legal analysis regarding the interplay between Sections 2 and 3 of the Lease and the conclusion that SSAI could lawfully terminate the Lease if/when it learned that it was not going to be awarded the Follow-On STARSS Contract by NASA. Rather, Hampton's Opposition seeks to attack SSAI's Motion in two illusory respects, neither of which are true or warrant denial of SSAI's Motion. For these reasons, which are discussed in detail below, as well as those set forth in SSAI's Motion and Memorandum in Support ([ECF Nos. 5 and 6], collectively referred to as the Motion), SSAI lawfully terminated the Lease

and Hampton fails to state a claim upon which relief can be granted in Count I of its Complaint. As such, the Court should grant SSAI's Motion and dismiss Count I of Hampton's Complaint, with prejudice.

## **INTRODUCTION**

The dispositive question underpinning Count I of Hampton's Complaint [ECF No. 1-2] is whether SSAI's decision to terminate the Fifth Amendment to the Deed of Lease dated January 8, 2021 (the "Lease") pursuant to the terms of Section 3(ii) is valid and enforceable. The simple answer – based on the clear and unambiguous terms of the Lease and the facts alleged by Hampton in its own Complaint – is that SSAI was authorized to terminate the Lease after it received notice that it was not going to be awarded the Follow-On STARSS Contract by NASA. Notably, Hampton does not dispute SSAI's legal analysis regarding its authority to terminate the Lease pursuant to Section 3(ii).

Rather, Hampton fabricates two meritless arguments that are belied by the very allegations in its own Complaint, the arguments actually made by SSAI in its Motion, and the terms of the Lease. First, Hampton tries to create the illusion that SSAI relied on disputed facts and facts outside the pleadings to support its Motion, but that simply is not true, as the allegations in Hampton's Complaint and the arguments in SSAI's Motion belie Hampton's contentions. Second, Hampton contends it had reason to believe SSAI won the Follow-On STARSS Contract, as evidenced by the fact that it charged SSAI the lower rent that would apply if SSAI were awarded the Follow-On STARSS Contract. The problem for Hampton, however, is that the allegations in the Complaint clearly and unambiguously show that it elected to charge SSAI the lower rent "in anticipation" of the contract being awarded to SSAI. Hampton's claim that it was proper to "assume" the contract was awarded to SSAI also is belied by the clear and unambiguous terms of

the Lease, which specifically require SSAI to provide a copy of certain clauses from the Follow-On STARSS Contract to Hampton as a condition precedent for the Fifth Amendment Term to commence, and Hampton never alleged it received those clauses.  In other words, there is no basis upon which Hampton could reasonably "assume" the contract had been awarded.  Moreover, assumptions about certain events do not alter the clear and unambiguous terms of a contract and, in this case, the clear and unambiguous terms of the Lease state that the sixty (60) month extension was triggered only in the event that the Follow-On STARSS Contract was in fact awarded to SSAI, not Hampton's decision to charge SSAI lower rent prior to SSAI receiving notification from NASA regarding the award of the Follow-On STARSS Contract.

## **STANDARD OF REVIEW**

SSAI reincorporates and adopts as if fully set forth herein the Standard of Review contained within its Motion filed on September 22, 2023.  Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted."  *See* FED. R. CIV. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Fessler v. Int' l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Partin v. NuWave, LLC*, 603 F. Supp. 3d 280, 282 (E.D. Va. 2022) (explaining that the sole "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint"). As Hampton acknowledged in its Opposition, a Rule 12(b)(6) motion "'*does not resolve contests surrounding the facts*, the merits of a claim, or the applicability of defenses.'"  *See* ECF No. 8 at p. 3 (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 441 (4th Cir. 2015)) (emphasis added); *see also id.* at p. 4 (citing *Bosiger v. U.S. Airways*, 510 F.3d 442, 450

(4th Cir. 2007) (noting that a court "is not to consider matters outside the pleadings or *resolve factual disputes* when ruling on a motion to dismiss")) (emphasis added).[1]

## ARGUMENT

**I.  HAMPTON'S COMPLAINT DOES NOT DISPUTE THAT SSAI RECEIVED NOTICE IT WAS NOT BEING AWARDED THE FOLLOW-ON STARSS CONTRACT**

In Count I of the Complaint Hampton seeks more than $1.8 million, purportedly to cover years of accelerated rent for space that the Complaint acknowledges has been vacated by SSAI. *See* Compl. at ¶¶ 22-29. Hampton is not entitled to this monetary windfall, however, because the sixty (60) month lease extension never commenced for the reasons discussed in SSAI's Motion and this Reply.

Hampton's first attempt at misdirection is to create the illusion that SSAI's Motion "assumes that the Defendant's termination based on Section 3(iii) of the Fifth Amendment is a proven uncontested fact regarding NASA's determination relative to the Follow-On STARSS Contract." *See* Opp. [ECF No. 8] at 4. As an initial matter, as explained in SSAI's Motion (and as acknowledged in the Complaint) SSAI did not terminate the Lease pursuant to Section 3(iii); it terminated the Lease pursuant to Section 3(ii).

More importantly, SSAI's Motion is not premised on the "proven" fact regarding NASA's determination relative to the Follow-On STARSS Contract. SSAI's Motion is premised on

---

[1] To be clear, SSAI does not concede that any factual dispute exists before the Court, as Hampton has merely raised a fictitious claim disguised as a "factual dispute" in a desperate attempt to persuade the Court to deny SSAI's Motion. Indeed, as explained further herein, SSAI does not rely on any disputed facts in filing its Motion; rather, the factual allegations SSAI relied on are all contained in Hampton's Complaint (and, to the extent SSAI relied on matters referenced on government websites, the Court is authorized to take judicial notice of such matters when ruling on a motion to dismiss).

4

Hampton's failure to contest that SSAI received notification it was not being awarded the Follow-On STARSS Contract, thereby rendering that notification undisputed. In this regard, SSAI alleged in its Complaint that, "On or about April 30, 2023 . . . the Defendant sought to inform the Plaintiff that it intended to unilaterally terminate the Lease in thirty days because NASA had notified the Defendant that it was 'no longer being considered' for the Follow-On STARSS Contract; a copy of this correspondence from the Defendant is attached hereto as **Exhibit G**." *See* Compl. [ECF No. 1-2] at ¶ 15 (emphasis in original). The letter attached to the Complaint (Exhibit G) advised Hampton that SSAI "is no longer being considered for the follow on STARRS [sic] contract" and, as a result, SSAI was terminating the Lease pursuant to Section 3(ii). *See* Compl., Ex. G.[2] Significantly, *nowhere* in the Complaint does Hampton dispute the fact that SSAI received such notification about the award of the Follow-On STARSS Contract. *See generally*, Compl.

Instead of actually contesting the fact that SSAI received notification that it was not being awarded the Follow-On STARSS Contract, in its Opposition, Hampton tries to create the illusion there is a disputed fact regarding the status of the award of the Follow-On STARSS Contract. In this regard, Hampton asserted – for the very first time – that, "despite repeated requests for status and verification beforehand, the Plaintiff *still* had no clear indication whether the Defendant was actually awarded the Follow-On STARSS Contract." *See* Opp. at 4 (emphasis in original). There are no allegations to this effect whatsoever in the Complaint, however. *See generally*, Compl.[3]

---

[2] Exhibit G starts on page 84 of the 84-page pdf file containing ECF No. 1-2. When ruling on a motion to dismiss, a court may consider any document attached to the complaint without converting the motion to a motion for summary judgment. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("Where a copy of a written instrument is attached as an exhibit to the complaint or incorporated by reference, the instrument is part of the complaint, and a court may consider it.").

[3] It is ironic that Hampton contends that SSAI is improperly relying on facts outside the pleading when it is in fact Hampton that is engaging in such tactics that are improper when evaluating a motion to dismiss.

Indeed, when making this assertion in its Opposition, Hampton cites to Paragraphs 15 and 16 of its Complaint, contending SSAI acted "unilateral[ly]" and "pretextual[ly]" when it terminated the Lease.  *See* Opp. at 4.  Paragraph 15, however, simply summarized the termination notice letter Hampton received from SSAI that explained SSAI received notification it was not being awarded the Follow-On STARSS Contract, accused SSAI of acting "unilaterally" without explanation, and noted that the termination letter was attached to the Complaint as Exhibit G.  *See* Compl. at ¶ 15.  Notably, there is no mention whatsoever about attempts to determine whether SSAI's assertion in its termination notice letter were in fact true or false.  Paragraph 16 of the Complaint simply recited the terms of Section 3 of the Lease and asserted that SSAI "pretextually" relied on Section 3(ii) of the Lease when terminating it.  *See* Compl. at ¶ 16; *see also* Compl., Ex. F at § 3.  Again, there is no allegation whatsoever contesting the factual assertions contained in SSAI's termination notice letter attached as Exhibit G regarding the status of the Follow-On STARSS Contract.  *See Turner v. Dentaquest, LLC*, Civil Action No. 3:17cv527-HEH, 2018 U.S. Dist. LEXIS 134866, at *9 (E.D. Va. Aug. 9, 2018) (stating that "a court considering a motion to dismiss is both informed and constrained by the four corners of a complaint").  Thus, Hampton's attempt to contrive a disputed fact cannot withstand scrutiny and result in a denial of SSAI's Motion.

Hampton's attempt to manufacture a factual dispute also fails when examining other allegations in the Complaint, which demonstrate in no uncertain terms that Hampton is not contesting and has not contested the factual assertions in SSAI's termination letter regarding the status of the Follow-On STARSS Contract.  In this regard, in Paragraph 23 of the Complaint, which is found in Count I of the Complaint, Hampton realleges that SSAI acted unilaterally and pretextually.  *See* Compl. at ¶ 23.  In the very next paragraph (Paragraph 24), Hampton explained its contention that SSAI's alleged "pretextual" and "unilateral" action was not premised on a

factual dispute or uncertainty regarding the status of the award of the Follow-On STARSS Contract. Rather, according to Hampton, any confusion by Hampton was connected to the amount of rent it elected to charge SSAI or was based on its own misreading of the Lease, neither of which can create a factual dispute that can defeat SSAI's Motion. Hampton stated, "Defendant did not have the right to terminate the Lease in this manner at any point after December of 2021: the time when both Plaintiff and Defendant had deemed the Fifth Amendment Term to have commenced and the Defendant began paying the lesser amount of rent." *See* Compl. at ¶ 24. Hampton further explained in the following paragraph (Paragraph 25), alternatively, that SSAI "pretextually" terminated the Lease based on its interpretation of Section 3 and what was meant by the "earliest" of the events described therein. *See* Compl. at ¶ 25. Neither of these "factual" assertions (they are more akin to legal arguments) contests or raises uncertainty regarding the status of the award of the Follow-On STARSS Contract. And after SSAI debunked each of these flawed legal analyses/allegations in its Motion, it appears that Hampton has abandoned each of these arguments, as Hampton did not assert either of them in its Opposition. *See generally*, Opp.

Hampton also tries to avoid dismissal of Count I by incorrectly contending that SSAI impermissibly relied on facts outside the pleading in making its Motion. *See* Opp. at p.4. While it is true that SSAI included citations to government websites in its Motion (*see* ECF No. 6 at p.6 n.4 and p.7 n.5), such citations do not preclude the Court from granting SSAI's Motion. Indeed, footnote 5 (which reflects NASA's announcement about the award of the contract) is found on NASA's website and footnote four (which contains background information about the contract) also is found on a website of the federal government. It is well established that a court may take judicial notice of public records and other information constituting "adjudicative facts" when evaluating a motion to dismiss. *See Turner*, 2018 U.S. Dist. LEXIS at * 9 ("[A] court considering

a motion to dismiss . . . may properly . . . take judicial notice of matters of public record.");[4] *see also* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). In fact, this Court has previously taken judicial notice of similar public government sites when ruling on motions to dismiss, and should do so here. *See e.g.*, *Deluca v. Instadose Pharma Corp.*, No. 2:21-cv-675, 2023 U.S. Dist. LEXIS 149974, at *13 n. 3 (E.D. Va. Aug. 24, 2023) (restating allegation in the complaint, then referencing and taking judicial notice of a public government website to support the claims in the complaint); *Mueller v. Blinken*, No. 4:23-cv-24, 2023 U.S. Dist. LEXIS 130200, at *17 n. 8 (E.D. Va. July 17, 2023) (citing to and taking judicial notice of a public government website and explaining that the court is permitted to consider such material when ruling on a motion to dismiss); *see also Hall v. Virginia*, 385 F.3d 421, 424 n. 3 (4th Cir. 2004) (taking judicial notice of "publicly available" statistics "on an official government website "in reviewing the dismissal of [a] complaint under Rule 12(b)(6)").

For these reasons, Hampton's arguments in its Opposition regarding purported factual disputes or the consideration of matters outside the pleadings should not prevail and should not result in a denial of SSAI's Motion. Rather, for the reasons set forth herein and in the Motion, SSAI's Motion should be granted and Count I of the Complaint should be dismissed, with prejudice.

---

[4] Hampton does not even dispute this well recognized legal principle, as it cites a United States Supreme Court decision that acknowledges "matters of which a court may take judicial notice" may be considered when ruling on a motion to dismiss. *See* Opp. at p.4 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## II. HAMPTON'S DECISION TO CHARGE LOWER RENT BASED ON ITS ASSUMPTION THAT SSAI WAS AWARDED THE FOLLOW-ON STARSS CONTRACT IS BELIED BY THE ALLEGATIONS IN THE COMPLAINT AND THE TERMS OF THE LEASE AND, FURTHERMORE, SUCH ASSUMPTIONS DO NOT ALTER THE CLEAR AND UNAMBIGUOUS TERMS OF A CONTRACT

Hampton's fallback argument rests upon the fallacy that, because SSAI began paying the lower monthly rent under the Fifth Amendment, SSAI somehow inherently admitted that it had been awarded the Follow-On STARSS Contract. Hampton's argument, however, is belied by its own allegations, as it acknowledged – multiple times in its Complaint – that it merely assumed SSAI was awarded the Follow-On STARSS Contract and Hampton's assumptions cannot alter the terms and conditions of the Lease.

As an initial matter, Hampton acknowledged in its Complaint that its decision to charge lower rent to SSAI was based on its *assumption* that SSAI had been awarded the Follow-On STARSS Contract. *See* Compl. at ¶ 13 (alleging that the lower rent payments were the result of Hampton "assuming the Defendant had actually been awarded the Follow-On STARSS Contract"); *see also id.* at ¶ 14 (alleging that the lower rent payments were the result of Hampton "again assuming the Defendant had actually been awarded the Follow-On STARSS Contract"). Assumptions, however, cannot alter the clear and unambiguous language of a contract. *See, e.g., Commonwealth v. Norman*, 268 Va. 539, 549, 604 S.E.2d 82, 88 (2004) (explaining that "when the language in a [contract] is clear and unambiguous, the courts are bound by the plain meaning of that language" and, therefore, mere assumptions in direct conflict with the plain language cannot pass muster); *Wallace v. Commonwealth*, 76 Va. App. 696, 710, 883 S.E.2d 664, 671 (2023) (holding that the Commonwealth's assumption conflicted with the plain language of the code); *Wright v. Eli Lilly & Co.*, 65 Va. Cir. 485, 498 (Cir. Ct. 2004) (finding that a court's assumed interpretation of a given statute (which canons of interpretation similarly apply to a contract)

conflicted with the plain language of the statute). In this case, as explained at length in SSAI's Motion, the clear and unambiguous language of the Lease indicates the sixty (60) month extension is triggered only in the event that SSAI were in fact awarded the Follow-On STARSS Contract.[5] Indeed, if it were as easy to lock in a party to certain obligations under a contract simply by having the other party make erroneous assumptions, the terms of a contract would have no meaning.

Even if Hampton's decision to charge and SSAI's agreement to pay the lower rent applicable to when the Follow-On STARSS Contract had been awarded could somehow give rise Hampton's purported assumption about the status of the Follow-On STARSS Contract, Hampton's "assumption" about the purported award of the Follow-On STARSS Contract is directly contradicted by the express allegations in its Complaint. In this regard, Paragraph 12 of the Complaint expressly alleges that, "in December of 2021, the Plaintiff and Defendant began leasing the Property in accordance with the Fifth Amendment to Deed of Lease *as if/in anticipation of* the Defendant being awarded the Follow-On STARSS Contract." *See* Compl. at ¶ 12 (emphasis added).[6] Paragraph 12 of the Complaint candidly admits that Hampton elected to charge SSAI the lower rent amount not based on an assumption, but *in anticipation* of the contract being awarded to SSAI.[7] Hampton's decision to charge lower rent does not alter the unambiguous terms of the

---

[5] For the sake of brevity, SSAI will not repeat those arguments here, especially when considering that Hampton did not challenge those arguments in its Opposition.

[6] Hampton even cited to Paragraph 12 of the Complaint in its Opposition when arguing that the lower rent payment somehow supported its belief that SSAI had been awarded the Follow-On STARSS Contract. *See* ECF No. 8 at 5 (citing Compl. at ¶¶ 12-14).

[7] It is nonsensical to suggest that SSAI was required to reject the gift offered by Hampton to pay lower monthly rent than required under the Lease. Moreover, accepting such a gift does not equate to a confirmation that SSAI was awarded the Follow-On STARSS Contract, especially considering it is undisputed in the Complaint that the parties understood the payment of the lower rent amount was being offered *in anticipation* of the contract eventually being awarded to SSAI.

Lease and bind SSAI to the full sixty (60) month extension when it was not awarded the Follow-On STARSS Contract.

Moreover, any suggestion that Hampton justifiably assumed that the Follow-On STARSS Contract had been awarded to SSAI is further belied by the express terms of the Lease. In this regard, Section 4 of the Lease (as stated in the Fifth Amendment) states that "[p]rovided that [SSAI] has provided [Hampton] with a true and correct copy of the termination clauses within the Follow-On STARSS Contract prior to the commencement of the Fifth Amendment Term . . . ." *See* Compl., Ex. F at § 4. In other words, Section 4 of the Fifth Amendment expressly called for SSAI to provide a copy of the termination clauses of the Follow-On STARSS Contract to Hampton once the contract was awarded to SSAI, but Hampton does not allege that it ever received those termination clauses. *See* generally, Compl. More importantly, this Lease provision means there is no reason for Hampton to make any assumptions about the status of the Follow-On STARSS Contract; Hampton would necessarily know when/if SSAI was awarded the contract because it was contractually required for Hampton to receive copies of those termination clauses of the Follow-On STARSS Contract "prior to commencement of the Fifth Amendment Term." Thus, SSAI cannot feign some disputed fact or uncertainty about the status of the Follow-On STARSS Contract.

At bottom, Hampton does not cite and, in fact, cannot cite, a single paragraph in the Complaint confirming or even suggesting that SSAI actually received the Follow-On STARSS Contract from NASA. Instead, the allegations in the Complaint and the terms of the Lease all indicate that complete opposite – that SSAI did not receive the Follow-On STARSS Contract. Thus, based upon the clear and unambiguous terms in the Lease – which Hampton does not dispute – coupled with the fact that SSAI was not awarded the Follow-On STARSS Contract at any point

11

in time, Count I of Hampton's Complaint fails to state any claim for wrongful termination (*i.e.*, breach) of the Lease and, as a result, Count I of the Complaint should be dismissed, with prejudice.

## CONCLUSION

For these reasons, as well as those in SSAI's Motion, SSAI respectfully requests that this Court grant its Partial Motion to Dismiss and enter an Order dismissing Count I of the Complaint in its entirety or, at the very least, dismissing Hampton's claim in Count I for at least $1,888,459.62 in accelerated rent payments (not including interest), with prejudice.

Date: October 11, 2023  Respectfully submitted,

*/s/ Stephen B. Stern*
Stephen B. Stern, Virginia Bar No. 40300
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
Telephone:   (410) 216-7900
Facsimile:    (410) 705-0836
Email:         stern@kaganstern.com

*Counsel for Defendant*
*Science Systems and Applications, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of October, 2023, a copy of the foregoing Memorandum in Support of Defendant Science Systems and Applications, Inc.'s Partial Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF filing system and served via electronic mail, to the following:

>Kyle D. Korte, Esq.
>Scott A. Krystiniak, Esq.
>WOLCOTT RIVERS GATES
>200 Bendix Road, Suite 300
>Virginia Beach, VA 23452
>Phone: (747) 497-6633
>Facsimile:     (757) 687-3655
>Email:         korte@wolriv.com
>Email:         skrystiniak@wolriv.com
>
>*Counsel for Plaintiff*
>*Hampton Roads III Owner, LLC*
>
>     */s/ Stephen B. Stern*
>     Stephen B. Stern